UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MELISSA COMPTON,<br><br>      Plaintiff,<br>  v.<br><br>TARGET CORPORATION,<br><br>      Defendants. | Case No. 2:24-cv-00937-TLF<br><br>ORDER ON DEFENDANT TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT |

Before the Court is Target Corporation dba Target Store #1947's ("defendant") Motion for Summary Judgment. Dkt. 26.

The parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 13.

Considering each party's briefs, the oral argument, and the record, the Court DENIES defendant's motion for summary judgment because a genuine issue of material fact exists. A reasonable jury could return a verdict for plaintiff concerning the nature of defendant's business and its methods of operation, and whether the existence of the alleged unsafe condition was reasonably foreseeable. These factual issues are properly resolved by a jury.

## I. FACTUAL BACKGROUND

This case was removed from Washington state court based on diversity of citizenship. Dkt. 1. It arises from a slip and fall incident that occurred on December 28, 2022 at a Target store located in Federal Way, Washington. Dkt. 1-2, Complaint ¶ 2.

1  Plaintiff Melissa Compton alleges that, while walking towards the clothing and cosmetics
2  sections of the store, she suddenly slipped and fell on a "slick, almost greasy" area of
3  the floor, although she did not see any liquid. Dkt. 31, Declaration of Melissa Compton
4  ¶¶ 3-4. She states her right leg flew out from under her, causing her to fall with full force
5  on her right elbow. *Id*. ¶ 4; *see also* Dkt. 32, Declaration of Sydney Greene ¶ 6. In her
6  deposition, plaintiff states it was raining outside and she wiped her shoes at the
7  entrance immediately after entering defendant's store. Dkt. 27, Declaration of Sarah
8  Tuthill-Kveton, Deposition of Melissa Compton, Ex. A, at 22:20-22.

9      Plaintiff was accompanied by her two stepdaughters and one of their friends,
10  Sequoia Brookes, who submitted a declaration stating she "saw [plaintiff] slip and fall
11  inside the store," and observed "a wet spot on the floor" that "appeared to be a clear
12  liquid." Dkt. 34, Declaration of Sequoia Brookes ¶¶ 2–5. Ms. Brookes "assumed it was
13  water on the tile floor." *Id*. ¶ 5.

14      Immediately after the fall, plaintiff exited the store – she testified she felt as
15  though she "was going to throw up" and became really "hot and nauseous" as her
16  "elbow was throbbing." Dkt. 27, Tuthill-Kveton Decl., Deposition of Compton, Ex. A, at
17  19:1-6; *see also* Dkt. 34, ¶ 7. Although plaintiff did not report the incident to any store
18  member, a Target employee put a "Wet Floor" sign next to the area where plaintiff fell
19  shortly after the incident. Dkt. 27, Ex. A, at 21:3-6; Dkt. 32, Sydney Greene Decl., ¶ 6;
20  Dkt. 34, ¶ 7. Plaintiff quickly left the store, went home to change her clothes, and went
21  to the emergency room with her husband. Dkt. 27, Ex. A, at 21:16-25. Plaintiff returned
22  at a later date and took photographs of the area where she fell. Dkt. 31, Ex. A; Dkt. 27,
23  Ex. A, at 22:1-5.

24
25

Plaintiff's medical evidence shows she was diagnosed with a closed olecranon fracture in her right elbow and was initially prescribed oxycodone for her pain and given a sling. Dkt. 29-9, Medical Record Review by Dr. Jonathan Ritson, at 2. She underwent elbow surgery on January 9, 2023 and had supplemental surgery on November 9, 2023 to remove hardware. *Id*. at 2-4.

Plaintiff's medical evidence also shows she attended physical therapy for her injury from February 16, 2023 to March 17, 2023, with signs of improvement from her initial visit. *Id*. at 4-5. Plaintiff's medical expert, Dr. Ritson, concluded the residual loss of range of motion could be regained with limited physical therapy, as well as full-strength. *Id*. at 7.

Plaintiff asserts it was raining on the day of the incident and provided evidence that defendant admitted they are aware spills occur, that spills are hazardous, and that policies and practices, such as Target's training materials and employee handbooks, show that Target knows customers track water into the store. Dkt. 31, ¶ 4; Dkt. 28, Pl.'s Resp. to Def.'s Mot. Summ. J., at 6. Plaintiff retained safety expert Levi Dixon, who opined defendant's use of vinyl composite tile ("VCT"), which becomes slippery when wet, combined with the foreseeable presence of liquid from inclement weather or store merchandise, presented a safety hazard. Dkt. 30, Declaration of Levi Dixon, at 2. Dixon's report discussed defendant's internal spill response policies and the store's alleged failure to implement non-slip flooring in moisture-prone areas. *Id*. at 2-3.

Plaintiff has submitted examples of defendant's spill response guidelines and protocols (Dkt. 29, 37), including:

- Employees are instructed to know which spill they can clean and clean them immediately. Ex. 29-1, Target Corporation's Safety Programs and Process – Safety Fundamentals guidelines.

- Employees are reminded of the importance of spill stations as "they contain the items necessary for team members…. to clean up spills and thereby prevent slip and fall injuries" to team members and guests. Dkt. 29-2, Spill Stations and Supplies guidelines. The spill stations are "located throughout the store around key traffic areas" and typically include sales floor safety cones and items necessary to clean up spills. *Id*.

- All spills must be taken seriously and cleaned up promptly. Dkt. 29-3, Safety Programs and Process – Cleaning Spills guidelines. Each store has various substances that could cause a slip and fall and result in an injury. *Id*. Employees are expected to encounter different spills and use the right materials to protect themselves and customers. *Id*. "Spills must be wiped up, cleaned and dried before the area is considered safe." Employees must identify the spill, carry a spill square during every shift to "[w]ipe up any small (under 16 ounces) food beverage or water spill," "[g]uard and block off spill with 'Wet Floor' caution signs," and follow other general clean up and disposal procedures. *Id*.

- Employees are on notice that "[f]ood, beverage, and water spills should be cleaned up immediately" and are instructed to "[a]lways carry a spill pad" so they "can address these types of spills right away." Dkt. 29-4, Safety Programs and Process – Safety Expectations for Team Members.

ORDER ON DEFENDANT TARGET CORPORATION'S
MOTION FOR SUMMARY JUDGMENT - 4

- Employees must ensure "spills are cleaned immediately, and spill stations are stocked with supplies," they "clean as they go," and "floors are free of liquid or debris; front end is clear of water, snow, ice melt, etc." Dkt. 29-5, Slip, Trip & Fall guidelines. The policy also highlights the importance of having a spill pad as an employee to "immediately clean water, food, or beverage spills." *Id*.

- Spills on the tile floors on the sales floor must be blocked off and cleaned up immediately. *See* Dkt. 29-6, Interior Services Maintenance Standards Reference Guide.

- Employees should be prepared to address wet floors quickly when wet weather is expected. Dkt. 26-7, Stay Safe During Rain, Ice & Snow. Employees must carry a spill square and "set out wet floor signs when it is slippery or there is a spill." *Id*.

- Every employee can and is expected to clean up common nonhazardous spills, such as food, drink, rain, or snow. Dkt. 37, video of defendant's training lesson "Hazard communication bloodborne pathogen awareness." Once an employee sees a spill, they must guard the spill to prevent others from approaching, and, if required, call for help and set up caution cones to block the area. *Id*. A spill is never to be left unattended. *Id*.

Defendant asserts plaintiff did not offer evidence as to the "existence, nature, or duration of any substance on the floor" and emphasizes plaintiff admitted she did not see exactly what she slipped on. *See* Dkt. 26, at 3–4; Dkt. 31, ¶ 4. Plaintiff has not

ORDER ON DEFENDANT TARGET CORPORATION'S
MOTION FOR SUMMARY JUDGMENT - 5

submitted documentation regarding prior spills or incidents in the area or evidence defendant failed to conduct routine floor inspections. *See generally* Dkt. 28.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). The Court then views the facts in the light most favorable to the nonmoving party and resolves any ambiguity in that party's favor. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). The Court may not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 248–49, 255.

Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under the *Erie* doctrine, federal courts sitting in diversity

1  apply state substantive law and federal procedural law. *Erie R.R. Co. V. Tompkins*, 304
2  U.S. 64, 58 (1938).

3          III.  Discussion

4    **A. Negligence Framework under Washington State Law**

5    Under Washington law, a plaintiff asserting negligence must establish: (1)
6  defendant owed a duty to plaintiff ("duty"); (2) defendant breached that duty ("breach");
7  (3) plaintiff sustained an injury ("harm"); and (4) a proximate cause between the breach
8  and the injury ("cause-in-fact"). *See Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605,
9  611-12 (2021) (citing *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28
10 (1994)).

11   In the context of premises liability, "the cause-in-fact element traditionally
12 requires proof that the defendant had actual or constructive notice of the alleged unsafe
13 condition." *Galassi v. Lowe's Home Centers, LLC*, 4 Wn.3d 425, 428 (2025) (citing
14 *Johnson*, 197 Wn.2d at 612). Where there is no evidence of actual or constructive
15 notice, Washington recognizes plaintiff need not prove actual or constructive notice if
16 the nature of the business and its methods of operation make the existence of a
17 hazardous condition reasonably foreseeable. *Pimentel v. Roundup Co.,* 100 Wn.2d 39,
18 49 (1983).

19   This rule applies only where the risk of harm is inherent in the manner in which
20 the business regularly operates. *Johnson*, 197 Wn.2d at 614 (citing *Wiltse v. Albertson's*
21 *Inc.*, 116 Wn.2d 452, 461). Since "the reasonability foreseeability exception is used to
22 establish cause in fact, 'whether it applies is fundamentally a question of fact for the
23 jury'" unless the facts are not disputed and 'reasonable minds could not differ.'" *Galassi*,
24
25

ORDER ON DEFENDANT TARGET CORPORATION'S
MOTION FOR SUMMARY JUDGMENT - 7

4 Wn.3d at 440 (quoting *Moore v. Fred Meyer Stores, Inc.*, 26 Wn. App 2d. 769, 777 (2023)).

### B. Reasonable Foreseeability Under *Pimentel* and its Progeny

In *Pimentel*, plaintiff, while browsing magazines, was injured when struck by a can of paint that had been placed by an employee at the base of the magazine rack. *Pimentel*, 100 Wn.2d at 40-41. Neither plaintiff nor anyone around her noticed the can prior to being struck and the trial court instructed the jury that the store could only be liable if it had actual or constructive notice. *Id*.

On appeal, the Washington Supreme Court recognized that evolving retail practices – particularly those involving customer self-service – made the existence of certain hazards reasonably foreseeable. *Id*. at 46 ("[M]odern techniques of merchandising necessitate some modification of the traditional rules of liability."). The Court held that a plaintiff would not have to prove actual or constructive notice:

> "[W]hen the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable. This exception merely eliminates the need for establishing notice and does not shift the burden to the defendant to disprove negligence. The plaintiff must still prove that defendant failed to take reasonable care to prevent the injury."

*Id*. at 49. Since adopting this framework, the Washington Supreme Court has extended this logic beyond traditional customer self-service environments to encompass a broad range of operational models – particularly those in which certain hazards are a predictable result and related to how the business functions. *Johnson*, 197 Wn.2d at 618 ("The self-service requirement of the exception no longer applies.").

In *Johnson*, the Court allowed a plaintiff who slipped in a store entryway on a rainy day to proceed under the *Pimentel* exception. *Id*. at 622. Although plaintiff did not see any water on the floor before falling, and the store clerk testified there had been no similar incidents in that same area prior, the store's own policies acknowledged the risk by requiring wet floor signs during the rain. *Id*. at 620.

The store clerk in *Johnson* also testified rainy weather routinely led to wet and muddy footprints near the entrance. *Id*. The Court concluded that the presence of water in the entry way was a foreseeable result of the store's operations during inclement weather, noting customers coming in while it is raining is an inherent condition of doing business. *Id*. Although the Court found there was evidence in the record to contradict the reasonable foreseeability exception, there was sufficient support to uphold a jury verdict in plaintiff's favor. *Id*. at 621.

Similarly, in *Galassi*, the Washington Supreme Court affirmed the Court of Appeals' decision reversing summary judgment for the defendant and remanded a case in which the plaintiff was injured by a roll of wire fencing that fell from a high shelf. *See Galassi*, Wn.3d at 446. The Court emphasized the exception is a way for plaintiff to prove cause-in-fact. *Id.* at 122.

The burden is not shifted to the defendant to disprove negligence; the store's self-service model encouraged customers to handle and restock merchandise without employee assistance. *Id.* at 437. The Court held a jury could reasonably conclude it was foreseeable for a customer to improperly place a heavy item on a high shelf, creating a falling hazard. *Id*. at 442-43.

1   The Court rejected the argument that a plaintiff must identify exactly how the hazard was created or must set forth evidence of prior similar incidents. *Id*. at 440-41. Instead, it looked to the store's own safety procedures, which required employees to correct improperly shelved merchandise and conduct daily safety walks and concluded these policies supported the foreseeability of such risks. *Id*. at 443. When a hazard stems directly from a business's method of operation, foreseeability becomes a question of fact for the jury. *Id*. at 440.

Here, it is undisputed plaintiff was a business invitee of Target, and defendant therefore owed her a duty of care at the time she fell and sustained injury. To survive summary judgment, plaintiff must show breach of the duty and causation by establishing the existence of an unsafe condition, and that the defendant had actual or constructive notice, or that the facts show an exception to the notice requirement. Taking the facts in the light most favorable to the non-moving party, plaintiff has shown there is a genuine dispute of material fact as to the exception of *Pimentel, Johnson,* and *Galassi.*

Plaintiff asserts she fell near the cosmetics and clothing aisles of defendant's store during rainy weather. Dkt. 31, ¶¶ 3-4. Although plaintiff states she did not see a spill, her stepdaughters' friend, Sequoia Brookes, asserts in her declaration that she observed a clear liquid on the floor shortly after plaintiff's fall. Dkt. 34, ¶¶ 2–5.[1] A Target

---

[1] Defendant argues that Brookes' declaration creates a "sham fact issue," but that phrase conflates two distinct issues – the sham affidavit doctrine and self-serving affidavits. Dkt. 36, at 8. The sham affidavit doctrine applies only when a party presents a later sworn statement that directly contradicts prior sworn testimony without explanation. *Yeager v. Bowlin*, 693 F.3d 1076, 1080-81 (9th Cir. 2012); *see also Aerel, S.R.L. v. PCC Airfoils, L.L.C*., 448 F.3d 899, 908-09 (6th Cir. 2006). It does not apply here because Ms. Brookes is a third-party witness who has not been deposed. As for the self-serving nature of the declaration, the Ninth Circuit has held self-serving affidavits are not inherently disqualified and may create a genuine issue of material fact. *Nigro v. Sears, Roebuck & Co*., 784 F.3d 495, 497-98 (9th Cir. 2015). Defendant's concerns go to the weight and credibility of Ms. Brookes' testimony – questions for the jury

1 employee placed a "Wet Floor" sign in the area after the incident. Dkt. 27, Ex. A at 21:3-6; Dkt. 32, ¶ 6; Dkt. 34, ¶ 7. Defendant's internal policies show it was aware of wet conditions that could create safety risks. Its policies and procedures instruct employees to take precautionary measures, such as carrying and using spill pads, patrolling for hazards, and posting wet floor signs during inclement weather. *See* Dkt. 29, Nos. 1-8. A reasonable jury could find defendant's policies and procedures reflect defendant's recognition that its operations regularly expose customers to liquid on the floor, including "common nonhazardous spills, such as food, drink, rain or snow." *Id*. at 29-8, *see also*, opinion evidence by plaintiff's expert, Levi Dixon, Dkt. 30, at 2, 14, 22-24.

Under *Pimentel*, a plaintiff may establish notice by showing the hazardous condition was a foreseeable consequence of the defendant's mode of operation. *Pimentel*, 100 Wn.2d at 47-48. Plaintiff's retained expert further contends defendant does not implement "passive" safety controls, such as using slip-resistant flooring or applying friction-enhancing coatings. *Id*. at 26-27. He observed that defendant relied on "active" safety measures which require employees to identify and clean up spills when noticed, and to carry spill pads or set out caution signs as needed. *Id*. According to Mr. Dixon, these reactive human-dependent protocols are known to be unreliable, particularly in high-traffic environments. *Id*. Inspections may be missed, spills may go unnoticed, and transparent liquids may be difficult to detect on glossy VCT, especially under lighting conditions that produce reflective glare. *Id*. at 17, 27.

---

as triers-of-fact; a judge is precluded from making any credibility determinations at the summary judgment stage. *See Anderson* 477 U.S. at 255.

ORDER ON DEFENDANT TARGET CORPORATION'S
MOTION FOR SUMMARY JUDGMENT - 11

This is analogous to the Court's reasoning in *Galassi*, where the foreseeability of improperly shelved merchandise falling from a high rack was not negated by the absence of prior similar incidents; instead, the Court emphasized the store's operational model and internal procedures as evidence the risk was part of the way the business functioned. *See Galassi*, 4 Wn.3d at 442. Therefore, a reasonable jury could find that Mr. Dixon's opinion and defendant's own policies support the conclusion the presence of a slippery floor was not random or unforeseeable, but a predictable result of defendant's self-service operations.

In contrast, the cases cited by defendant in support of summary judgment are distinguishable. *See Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649 (1994); *Tavai v. Walmart Stores, Inc.,* 176 Wn. App. 122 (2013); and *Gaytan v. Lowe's Home Centers, LLC*, No. C24-0470-JCC, 2025 WL 1115412 (W.D. Wash. Apr. 15, 2025). In each of those cases, the court granted summary judgment because the plaintiffs failed to connect the hazard to the nature of defendant's business.

For example, courts have declined to apply the mode of operation theory when the hazard, such as gravel in a parking lot or unexplained substance in a mall corridor, was disconnected from any inherent risk associated with the store's layout, merchandise, or customer conduct. *See Gaytan*, 2025 WL 1115412, at *5; *Ingersoll*, 123 Wn.2d at 654-55. In those cases, there was no evidence that the business's operational model made the hazard foreseeable.

In *Tavai*, for example, the plaintiff slipped fifteen feet from a checkout area, and her expert opined only generally about slippery floors. *Tavai*, 176 Wn. App. at 133-34 (holding plaintiff failed to meet her burden to show that Walmart was negligent in

ORDER ON DEFENDANT TARGET CORPORATION'S
MOTION FOR SUMMARY JUDGMENT - 12

selecting its flooring as she presented no evidence that alternative materials would have been less slippery when wet). There was no evidence connecting the hazard to Walmart's business operations. *Id*. at 131-32.

In *Gaytan*, the plaintiff fell on sand or gravel in defendant's parking lot but failed to explain how the debris came to be there or show that such a risk was inherent to defendant's operations. *See Gaytan*, 2025 WL 1115412, at *3 (concluding "[w]hether or not the *Pimentel* exception applies is therefore, necessarily, a fact-intensive inquiry" and holding the exception did not apply because plaintiff could not explain how the sand or gravel ended up in a shopping cart corral and defendant did not have a specific policy of inspecting the corral). And, in *Ingersoll*, the plaintiff fell in a mall hallway with no evidence linking the spill to any aspect of the mall's business practices. *Ingersoll*, 123 Wn.2d at 654-55 (holding a mall not liable when no evidence established a causal link existed between its operations and an alleged substance on the floor).

Here, by contrast, plaintiff has presented specific evidence, supported by percipient witness testimony, expert opinion, and defendant's internal policies, to raise a genuine dispute of material fact about whether a liquid from an unspecified source located on the floor in an area where customers are allowed to be walking, is a foreseeable risk, especially during wet weather and in customer walkways. It does not appear that Washington law requires plaintiff to show the specific source of the liquid, or how the liquid came to be in that location.

The Washington Court of Appeals recently overturned a jury verdict based on instructional error on the issue of *Pimentel* in *Moore v. Fred Meyer Stores, Inc.,* 26 Wn. App.2d 769, 776-778 (2023), *review granted*, 2 Wash.3d 1001 (November 8, 2023).

That case is pending in the Washington Supreme Court, and that Court's decision may provide additional clarity concerning Washington law in this context.

## IV. Conclusion

Because a genuine issue of material fact exists regarding the foreseeability of the alleged hazard and whether the alleged safety issue is connected to defendant's operational practices, the Court concludes there are genuine disputes of material facts on the issues of breach and causation. Therefore, defendant's Motion for Summary Judgment (Dkt. 26) is DENIED.

Dated this 12th day of August, 2025.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge